Good morning, Your Honors. Martin Guajardo on behalf of Kabul Singh. The question before the court is, do we have substantial evidence to support the decision of the Board of Immigration Appeals and the immigration judge to find that the testimony of petitioner lacked credibility. The court has before it today a number of immigration cases addressing the issue that we are faced with today. And I think what becomes clear for us as we read the transcript of the proceedings below is that notwithstanding that every respondent before the immigration court is entitled to have an attorney present to represent him, we have the bulk of the questioning taking place by the immigration judge. And as counsel proceeds to pose these questions to the respondent before the immigration judge from the date that he was initially arrested in India, we have a difficult time. We find ourselves going page after page through that transcript with one person in that courtroom asking questions and finding themselves over and over again trying to determine what the respondent has said as to when he was arrested, how he was arrested. Something so straightforward as where is your passport becomes a two to three page ordeal in the transcript. And what we have here today is if we focus just solely on the question of the passport, the identity of Kabul Singh, the immigration judge denied voluntary departure to Kabul Singh and ordered him deported. And she did so because she made a finding that he didn't have the valid travel document. Well, we know that by the time opposing counsel filed his brief in this case, that Kabul Singh had already been deported, had already been removed to India, and it took only a few days for the agency to obtain a travel document. The issue of identity that became a core issue for the judge in denying voluntary departure and actually questioning the testimony as to who the respondent was, was resolved immediately by the agency. The same before this court filed in connection with his application, those same documents were immediately used by the agency to remove him from the United States. I think that we have a difficult situation in immigration court that needs to be addressed. And that is, it seems to me that the fundamental issue here is the credibility. The fundamental issue here is credibility determinations and the by the record, and to the extent they are not. And I think you've identified this whole passport issue as one which is not very persuasive, certainly from the standpoint of the record. But there are at least four issues, it seems to me, which are credibility issues, which are supported by the treatment of the police, by the police, and the supporting affidavits. What's your response to those that are, that do have roots in the record? Well, let's, if I may, if we look at the star punch issue that is throughout the record, we see this problem. We know that Manjit Singh or Mangat Singh, Mangat Singh is the first in time. We know that Jata Singh, second. And then we know that, I believe it's Rasam Lal is the one, the third one in time. But it takes, the record breaks down for us as we follow the judge and follow the defense attorney and the attorney for the government trying to ascertain almost who's on first, who's on second, who's on third. You know, that type of situation. Don't we have a deferential standard of review at this point? I mean, these are findings made by the IJ in the presence of the applicant and the materials, other witnesses and so forth. And what we find, at least my experience in going through this particular transcript is one that I have a difficult time understanding why it is that counsel for the respondent, for the immigration judge, never is able to continue with his direct examination. And we have the judge taking over that examination. And the respondent in front of, before her, attempting to explain and being cut off time after time so that he is now, he begins to, he tells, he tells the court, the Sarpanch is the one that will speak on my behalf. And there's some confusion as to how many individuals, did the entire counsel go with you? Were there five? Were there six? Do you know their names? And it almost appears that some of the issues, we lose sight of the core issue. And the core issue is what happened? Who was there and how is it that you were released? No one goes beyond that. We stop short. And that instance where we're trying to identify how long was Mangat Singh, the Sarpanch, what, did he die in an accident? Did he not die? These types of issues actually cloud the core issue for us because we know that Kabul Singh was arrested. We know that he was beaten. We know, even the question of how was he beaten, that it's labor-intensive trying to go, trying to go through this transcript and determine the beating. It becomes, it's almost impossible. And then to, at the end of the record, to conclude, well, I think that there's been too many inconsistencies. Candidly, we haven't had anyone present the case fully so that we can see what occurs for that one hour or two hours. We have three individuals trying to ascertain information and different questions being asked. And then at the end, the confusion that's injected by the immigration judge, by the time we get to the end. But if we're able to go beyond that confusion, all that dust storm that develops there, and we're able to see what his claim is, I think we recognize that he put forth his claim. He was able to identify when he was arrested, how, where it took place. And at the end, there's no questions being asked of you now. You can answer the questions that we ask you. So I think that in this instance, what we have is a situation of small errors, all at the end, being used to find that he's not credible. But in the larger scope of things, what we do have is we have a little bit of time. We've got a minute left for a couple of questions. Good morning, Your Honors. May it please the Court. My name is Victor Lawrence, and I represent the Attorney General. This Court should deny this petition for review. The law obligates an applicant for asylum to provide credible, convincing evidence that he or she deserves this relief. Here, the immigration judge's opinion that Mr. Singh did not qualify for asylum because of significant credibility problems that go to the heart of his asylum claim. To me, it's not clear whether or not the Board adopted the IJ's credibility finding. Your Honor, with all due respect. Do you agree with that? Do you agree with that or not? It's our contention, it's our position that the Board of Immigration Appeals did adopt the immigration judge's opinion. Where does it say that? They do not expressly use the word adoption, but Your Honor, if I may, they do say in the third line of the opinion, we find no error in the immigration judge's decision. We, third line of the opinion? I'm sorry? Third line of the opinion? Of the Board of Immigration Appeals opinion on page two of the record. We, I don't, we find, I don't see the we find anywhere. Okay, I'm sorry. You have the paragraph that starts out per curiam. Yeah. In the third line of that. We find no error. And if I may continue, we find no error in the immigration judge's decision. We agree with the immigration judge's, we agree with the immigration judge's that contradictions addressed in detail in her decision, implicitly adopting that decision, were not resolved by the respondent either during the proceedings or after the proceedings. It seems to me some of our case law requires a more direct adoption of credibility findings. No? I respectfully disagree, Your Honor. I think that the clear message in this opinion by the Board of Immigration Appeals is that they find no error in the judge's opinion, and we agree with it because of the reasons addressed in her decision. That that shows you find no error. But the question is whether or not they find that error, even assuming the petitioner's testimony is credible. I mean, in other words, it's important to me how they resolved in my heart, hard to determine how they resolved it since they make no express. I mean, it's possible they said, well, you know, even it doesn't matter whether he's credible or not, because even assuming he told the truth, we still not sufficient. I mean, that could that could have been the reason that we can't tell. Right. Well, I think you can't tell because the immigration judge's decision is purely based on adverse credibility. We can certainly tell what the immigration judge did. Right. Right. But but here the the the immigration judge's decision was purely based on adverse credibility. And here the Board of Immigration Appeals is saying we find no error in that decision. This this this sentence that says we affirm the immigration judge's conclusion that the respondent is not meant as burden of demonstrating. Yes. That's kind of a boilerplate. Is it or is that you. Well, I'm not sure what you mean by boilerplate. I mean, I've seen this in other areas. But but but what they're saying is he hasn't demonstrated his that that he qualifies for asylum. And it's because of the reasons in the immigration judge's opinion that he addressed in detail. I just think that when you look at that, that that statement alone, it could be read as saying we might not necessarily agree with the reasons, but we agree with the conclusion. But that's not what they're saying. I don't believe so, especially, you know, when they say above that we find no error in the judge's decision. And the judge's decision is purely based on adverse credibility. So I respectfully put forth the position that clearly the Board of Immigration Appeals intention here was to adopt the position of the immigration judge in which that judge found that this particular applicant had significant problems with this credibility and therefore didn't deserve asylum relief. Could you just explain to us why the grounds for the adverse credibility determined the inconsistencies were really of any significance? Sure, Your Honor. They're of significance because they go to the heart of this asylum claim. The petitioner tells the story of two occasions on which these Sikh militants from the Burundala Tiger Force come to his home. And then the next morning he's taken by the police and has seven days of beatings on the first occasion and seven days on the next occasion. And then there's this four-year gap. And then all of a sudden he's being accused of potentially of murdering a Hindu businessman. And he's called in for that. And he decides to leave India because he's afraid of what's going to happen to him as a result of being potentially charged with this murder of the Hindu businessman. I find it very interesting in the record at page 86. First of all, I want to be clear. So that's the reason why he left India, according to his written application. He was being potentially threatened with being accused of this murder. Page 86 of the record, he was directly asked, why did you leave India? He didn't say anything about this murder of the Hindu businessman. The first thing that comes out of his mouth is, answer, militant Sikhs used to come to my home. He's talking about events that happened in 1992 as opposed to the direct reason that he left India in 1996. This is one of the things that the judge reasonably looked at in determining, as she did at page 51 of the record, that this particular applicant, Mr. Singh, was not recalling details of his own experience. He was, in her mind, in observing the demeanor and the way that in the sincerity in which this individual is answering the questions, he was recalling items from a script and not necessarily from his own experience. The description of the beatings. In the application, he simply says that he was beaten. He didn't say how. So the judge reasonably asked him about this. By the way, I want to mention that in response to my opposing counsel, this applicant had a full and fair opportunity to be heard. He was represented by counsel. The fact that the immigration judge asked a lot of questions as opposed to his counsel is of no import, and the full and fair opportunity to be heard argument was not argued below, and therefore this court has no position to address that argument since it wasn't argued before the BIA. It was waived. With respect to the beatings, in the written application, he just says he was beaten. And then during live testimony, he's asked more about that, and he says that he was beaten because his legs were being stretched apart as he was handcuffed. And the judge reasonably asked him, well, how does that really qualify as a beating? And then he embellishes the testimony further. He says, well, oh, I was also beat with sticks. The judge could reasonably infer that this particular applicant. It sounds like that was having his legs stretched while handcuffed could have been worse than being beaten with sticks. Yeah, but I think in the typical. I'm not sure I agree with that. But but but in the typical world, when you think of a beating, I don't think anybody thinks about being stretched while you're in handcuffs. But I think it was only when the judge questioned him about this that he started embellishing and saying and bringing up facts that never occurred before that he was beaten with sticks. What do you say in the. The. The immigration judge relied on what you call embellishment to to find find incredibility. No, Your Honor. This is only one of many examples of an inconsistency in his from his written application to his live testimony. Written application merely mentions the word that he was being beaten. All of a sudden, when it comes to live testimony, it's it's seven days of beatings with sticks. Now, this is what I was going to ask you. Did he have counsel when he when he prepared his application? My understanding is he had counsel when he prepared his application. Isn't it? Which, by the way, I'm sorry. It says on the face of the application, explain fully your basis for seeking asylum. Isn't there some room for translation issues? As I understand it, his testimony was in Punjabi, which was then translated. And isn't there at least enough play in the joints there to suggest that there's really nothing much here? If it's stretching torture, beating wasn't argued below your honor. And I would suggest that if that argument has has been waived. But this particular immigration judge provided specific cogent reasons of why she found inconsistencies and contradictions in his testimony. Very interesting to note that he's charged with, you know, for for housing Sikh militants on two occasions and just providing them food. He's given seven days of beatings on each of those occasions, according to Mr. Singh. When he's accused of murder of a Hindu businessman, they simply ask him a few questions and they let him go. And he says that that's all of a sudden he's afraid that that's going to get him in trouble again. And he's going to get beaten again. And it didn't happen. And there's all the things with the star punch and all that. I know I'm out of time. Thank you. Thank you. I would leave the court. The following thought in mind, and that is at times when someone testifies, someone who is not, if you will. Born in this country, someone who is from another country, someone who speaks another language. At times, their testimony, no matter how skilled our interpreter may be, there may be some confusion just simply that is injected into the proceedings. I'm not I'm I recognize that this issue is not an issue that was raised below, but I simply leave the court that in having an immigration judge and the Board of Immigration Appeals make a credibility determination. I think it's paramount that we recognize that there will be those types of inconsistencies that will surface throughout the testimony of an individual. That will have to be weighed in in considering the credibility of the individual and should not be sufficient to, if you will, find that he's not credible. It's in the ordinary. I mean, immigration lawyer judges see these people all the time who have problems with the language. And are we to not just simply disregard judgments that might be made on the basis of distant of a demeanor? No, but I think that here what what becomes very, very troublesome for me after years and years of looking at these cases and having been a former trial attorney myself is that we have just from from the get go a situation that becomes rather tense in the courtroom. Just from looking at this reading this transcript that we know that. I mean, just from the beginning, if if we're sitting there and listening to someone give testimony and we don't even believe if the court does not even. If the court questions who that person is, the mere identity, I think it clouds everything else that happens after that. So with that, the matter is submitted. Thank you, Your Honor. The case just argued is submitted for decision.
judges: Schroeder, O'scannlain, Tashima